James L. Tyrrell and Julia C. Tyrrell v. Commissioner.
Tyrrell v. Commissioner
Docket No. 86267.
United States Tax Court
T.C. Memo 1962-53; 1962 Tax Ct. Memo LEXIS 253; 21 T.C.M. (CCH) 292; T.C.M. (RIA) 62053; March 15, 1962
*253 Paul A. Weick, Esq., Flatiron Bldg., Akron, Ohio, for the petitioners. Thomas J. Moroney, Jr., Esq., for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: The Commissioner determined deficiencies in the petitioners' income taxes, as follows: Year
Amount
1949
$ 2,749.16
1952
17,761.17
1953
2,477.80
1954
2,477.58 Most of the issues have been conceded by the petitioners. The only issue for decision is what portion of sums received under an agreement for the sale of stock constitutes gain to petitioners. Findings of Fact Some of the facts are stipulated and are found as stipulated. The petitioners are husband and wife. They filed their joint Federal income tax returns for the taxable years in question with the district director of internal revenue, Cleveland, Ohio, on a calendar year basis and the cash method of accounting. For purposes of this report, James will hereafter be referred to as the petitioner. In about 1936 Elizabeth Killian, an aunt of the petitioner, died. At her death she owned 1,249 shares of stock in the Killian Manufacturing Company, hereinafter referred to as Killian, which was engaged in the *254 manufacture of sundry rubber products. She also owned a 37 1/2 percent interest in certain valuable patents on machinery used by Killian. In her will she bequeathed these assets to petitioner in trust for the benefit of several relatives. Petitioner's uncles, John Tyrrell and William Tyrrell, and his sister, Eleanor Tyrrell (later Eleanor Tyrrell Hiel), each received a one-fourth interest in the trust. The remaining one-fourth interest was to be divided equally among the petitioner's mother, Hazel Tyrrell, and four of her children, James, Jr. (the petitioner), Lawrence (referred to in the will as Robert), Frances (later Frances Emery) and Mardell (later Mardell Katanich). Petitioner's sister Eleanor Tyrrell was also a daughter of Hazel. In the late 1930's Killian was in business difficulties due to intense competition from other manufacturers in the field. In order to lessen the impact of competition, the officers of Killian entered into an agreement with the management of L. E. Shunk Latex Products, Inc., hereinafter referred to as Shunk, its principal competitor. Pursuant to this arrangement, a partnership was established in 1937 to market the products of both Killian and Shunk. *255 This partnership was called the Killashun Sales Division, hereinafter referred to as Killashun. Its partners were Adam J. Killian and the petitioner (both officers of Killian), Maurice Gusman and Charles E. Jenkins. Gusman and Jenkins were previously associated with Shunk. Adam Killian died in 1939, and the remaining partners continued the partnership, adding their wives as partners in about 1941. At the time of Elizabeth Killian's death, the common stock of Killian was owned as follows: Shares
Petitioner (as trustee under the
will of Elizabeth Killian)
1,249
Rua Bertsch
750
Adam J. Killian
1
E. S. Killian
1 Thereafter, Killian was recapitalized and certain shares changed hands, so that sometime in 1939 the common stock of Killian was held as follows: Shares
Gusman
100,000
Jenkins
100,000
Petitioner (Individually)
37,550
Petitioner (as Trustee)
62,450 Also at sometime in 1939, all of the common stock of Shunk was acquired by Killian. The stock interests resulting from the recapitalization remained so held until the stock was all sold in 1946. During the years of World War II the manufacturing businesses and the sales partnership *256 both prospered. Killashun received net income of several million dollars during this period. Killashun had raised its prices to its customers, but Killian did not raise its prices to Killashun. In 1946 an opportunity arose to sell both Killian and Killashun. In order to avoid legal problems in dealing with the prospective purchasers, the trust created by Elizabeth Killian's will was terminated by court order and the stock held by the trustee was ordered distributed. However, the stock was not distributed but was held by the petitioner under an agreement with those who had been beneficiaries of the trust. This agreement allowed petitioner to negotiate a sale of the stock for the beneficiaries. In 1946 Gusman, Jenkins and the petitioner did enter into an agreement to sell all the stock of Killian to Bruce Osborne for $4,000,000, payable $1,000,000 60 days from the date of the sales agreement, $1,000,000 on or before July 22, 1947, and $500,000 on July 15 in each of the years 1948, 1949, 1950 and 1951. At the same time Gusman, Jenkins, petitioner and their wives entered into an agreement with Osborne to sell the Killashun partnership for the total sum of $4,000,000. This sum was payable *257 $500,000 in cash on or before September 23, 1946, and by an assumption of indebtedness of Killashun of $500,000 on or before the same date, $1,000,000 on or before July 22, 1947, and $500,000 on or before July 22 in each of the years 1948, 1949, 1950 and 1951. Both these sales agreements were consummated by the execution of written contracts which appointed the Firestone Bank in Akron, Ohio, trustee for the sellers. The bank held the stock sold as security for the performance of the sales agreements. It was also designated to receive the payments of the purchasers and distribute the money to the sellers. Osborne assigned the purchase contracts to the National Hygienic Products Corporation, hereinafter referred to as National, which entered upon the operation of the business. National failed to realize the profits it had expected from the operation of the business and threatened to seek a recision of the contracts of sale on the grounds that the sellers had misrepresented certain assets and indebtedness of the businesses. The sellers were no longer in a position to again undertake the operation of the business. Therefore, rather than risk any possibility that a recision of the *258 sales might be decreed, Gusman, Jenkins and the petitioner agreed in 1947 to a reduction in the sales price. At that time the petitioner's brother, Lawrence, and his sisters, Mardell and Frances, all of whom he had represented in the sale of the stock, objected to the reduction in the price of the stock. They contended that the petitioner had not been authorized to reduce the price with respect to their shares. They also asserted, at the same time, claims against the petitioner for a portion of the profits which he had made as a partner in Killashun at a time when he was an officer of Killian as well as a trustee. The petitioner on December 10, 1947, settled the dispute by giving each his note for $60,000, which was approximately the amount that would have been due them under the sales agreement before the reduction in price. Their proportionate share of the reduced sales price would have been $33,233.53 each. In return for these notes, the petitioner obtained general releases. This settlement agreement represented, in part, an agreement establishing the portion of the payments by National to which Lawrence, Mardell and Frances were entitled, in view of the petitioner's agreement *259 to the reduction of the purchase price without specific authority from them. A portion of the notes given by the petitioner constituted payment of the purchase price of their interests as so valued. Another portion of the notes given under this agreement represented payment for other claims. Seventy percent of the excess of the $60,000 over the amount each of the recipients would have been entitled to as their proportionate share of the reduced purchase price represented the agreed additional value of each of the recipient's shares. In 1949 petitioner joined Gusman and Jenkins in agreeing with National to another reduction in the purchase price. In 1951 petitoner's sister, Eleanor Tyrrell Hiel, whose interest he had also represented in the sale, filed suit against him and others claiming, inter alia, that the petitioner's agreements to reduce the purchase price had been made without authority from her. She had not participated in the 1947 settlement the petitioner made with his other sisters and brother. She made a claim with respect to the profits made by the petitioner from Killashun and a claim to a portion of the price received on the slae of Killashun. The petitioner settled *260 this litigation by an agreement dated September 25, 1952, with Eleanor that she should receive from the Firestone Bank $250,000 out of the sums paid to it by National on the purchase contracts. He obtained a general release from her. At the time of the settlement her portion of the reduced purchase price would have been $136,000. The settlement agreement represented, in part, an agreed amount of the purchase price to which Eleanor was entitled, taking into consideration the fact that the petitioner had agreed to a reduction of the purchase price without her specific authority, and in part a payment for the release of other claims. Seventy percent of the excess of $250,000 over $136,000 constitutes an additional amount of the purchase price of the stock which it was agreed that Eleanor was entitled to, and the remainder of the excess constitutes a settlement for other claims. No part of the amounts given in settlement of these claims was a gift motivated by family love and affection. Rather, these settlements were arm's length agreements entered into by the petitioner to avoid legal action by his brother and sisters. Opinion The petitioner contends that the sums he paid or agreed *261 to pay his brother and sisters on account of the claims made against him should be added to his basis for the interests in Killian and Killashun which he sold and should, therefore, reduce the amount of capital gain income he received from the transaction. The respondent, on the other hand, contends that the sums the petitioner agreed to give his brother and sisters related not only to the sale of Killian and Killashun but also constituted a settlement of other claims. Further, the respondent urges there is no valid method to apportion the settlement made by the petitioner between matters relating to the sale and settlement of other claims. Finally, he contends that a portion of the settlement constitutes a gift between members of a family based on love and affection. We have found that the settlements made by the petitioner were based on genuine legal disputes and not on family love and affection. We think that the petitioner and his brother and sisters were competent to agree among themselves what portion of the sale price each was entitled to in view of the fact that a genuine dispute existed as to the petitioner's authority to agree to a reduction in the price on their behalf. *262 We believe that a substantial amount of the settlement was based upon the claim that the petitioner acted without the authority of his brother and sisters in agreeing to the reduction in the price National was to pay for the Killian stock. This conclusion is based upon the fact that the reduction in the purchase price occasioned the claims made by the petitioner's brother and sisters. It is further based on the fact that the amount of the settlement closely approximates the amount of the purchase price the brother and sisters would have received had the price not been reduced. Although the petitioner has not shown precisely how much of the settlement related to the sale of the Killian stock, by applying the rule of (C.A. 2, 1930), we have determined that 70 percent of the sums which the petitioner agreed should be paid to his brother and sisters above the amount due on their proportionate shares in the reduced purchase price relates to the sale of the stock. We therefore hold that in the settlement of 1947 the petitioner agreed with his brother Lawrence, and his sisters Mardell and Frances, that each of their shares in the purchase *263 price of the Killian stock was worth $33,233.53, plus 70 percent of the difference between that figure and $60,000. We further hold that the petitioner purchased these interests for their agreed value of $33,233.53 plus 70 percent of $26,766.47. This value, then, constitutes a portion of the petitioner's basis in the sums received on account of the sale of the Killian stock. We have noted the fact that the parties have stipulated that at the time of the settlement the interests of Lawrence, Mardell and Frances "had a value due to the reduced sales price of the capital stock of Killian of $33,233.53 each or an aggregate value of $99,700.59." We do not interpret this to be an agreement to the value of these interests which takes into consideration the claims Lawrence, Mardell and Frances might have had against the amounts to be paid by National on account of the petitioner's agreement to the reduction of the purchase price. We believe that this stipulation was intended by the parties to indicate only the amounts that Lawrence, Mardell and Frances would receive if they were given a part of the reduced purchase price proportionate to the amount of the Killian stock they had sold. *264 We also hold that by the settlement in 1952 the petitioner agreed with his sister Eleanor that her share of the purchase price of the Killian stock was $136,000 plus 70 percent of the difference between that figure and $250,000, and agreed that she should receive this sum from the Firestone Bank out of the amounts paid by National. This settlement, perhaps, more properly constitutes a reduction in the petitioner's amount realized rather than an adjustment of his basis. However, we believe that this adjustment is fairly comprehended within the issue as framed by the petition. We have not considered any portion of the settlement made as paid in accordance with an agreement that part of the price received from the sale of Killashun should belong to the petitioner's brother and sisters. There is nothing in the record from which we can determine what portion of the settlement, if any, should be allocated to this claim. The petitioner has also contended, on brief, that he should be allowed to deduct the amount paid in settlement of these claims as a business loss or as a loss incurred in a transaction entered into for profit. We need not consider these questions because they were raised *265 neither by the petition nor at trial. , affd. (C.A. 3, 1953). Decision will be entered under Rule 50.